IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 8, 2013

**FRANK J. BEASLEY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 41000394     John H. Gasaway, III, Judge**

———————————

**No. M2013-00489-CCA-R3-PC   Filed October 29, 2013**

———————————

Appellant, Frank J. Beasley, stands convicted of one count of facilitation of second degree murder and three counts of facilitation of attempted second degree murder. The trial court sentenced him to an effective sentence of twelve years in the Tennessee Department of Correction. The post-conviction court determined that appellant was unconstitutionally prevented from appealing his convictions and sentences due to ineffective assistance of counsel and granted him relief in the form of a delayed appeal, which is now properly before this court. On appeal, appellant challenges the length of his sentences. Following our review, we affirm the judgments of the trial court but remand for entry of corrected judgment forms.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Case Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. JAMES CURWOOD WITT, JR., J., filed a separate concurring opinion.

Chase T. Smith, Clarksville, Tennessee, for the appellant, Frank J. Beasley.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and John Finklea, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case concerns the shooting death of U.S. Army Sergeant Bryan Hastye in Clarksville, Tennessee, on November 15, 2009, while he was traveling in a vehicle with three other soldiers: Franke'll Rogers, Jontrel Evans-Brown, and Lawrence Wilkerson. Appellant and his co-defendants were indicted for the first degree murder of Mr. Hastye; the attempted first degree murders of Mr. Rogers, Mr. Evans-Brown, and Mr. Wilkerson; the aggravated assaults of Mr. Rogers, Mr. Evans-Brown, and Mr. Wilkerson;[1] and employing a firearm in the commission of the attempted first or second degree murders of Mr. Rogers, Mr. Evans-Brown, and Mr. Wilkerson, for a total of ten counts. In addition, one co-defendant (Montez Hall) was indicted for possession of a handgun after being convicted of a felony.

The testimony at trial revealed that two groups clashed in the parking lot of Club 808 in Clarksville, Tennessee, in the early morning hours of November 15, 2009.[2] Witnesses testified that appellant made a derogatory comment about Kristina Darby to her boyfriend, Mr. Rogers, and a shouting match ensued. Ms. Darby said that she heard appellant say at one point that he was going to shoot Mr. Rogers. Mr. Rogers testified that he heard appellant say that he was going to get his "strap," which Mr. Rogers interpreted to mean a firearm. Club security broke up the groups, and the individuals returned to their respective cars.

Ms. Darby and her friend Sarah Meyers drove away in Ms. Meyers' Escalade. Mr. Rogers, Mr. Evans-Brown, Mr. Wilkerson, and Mr. Hastye followed them in Mr. Rogers' Grand Marquis, but Mr. Wilkerson was driving. Ms. Darby noticed that appellant and his friends had gotten into a black Dodge Charger and were following the Grand Marquis. Eventually, Ms. Darby became concerned because the Charger had been following them for so long. She called the passengers in the Grand Marquis and also called 9-1-1. While she was on the telephone with 9-1-1, she heard two sets of gunshots.

In the Grand Marquis, the men had not noticed the Charger following them until Ms. Darby called. They heard what they thought might have been gunshots, followed by a pause, and then another set of gunshots. The witnesses agreed that the Charger made a U-turn after the second set of shots. Mr. Hastye informed the other men that he felt like he had been shot. Mr. Rogers recalled seeing blood coming from Mr. Hastye's mouth. Mr. Wilkerson found

---

[1] The aggravated assault charges were dismissed by the State.

[2] Because appellant does not contest the sufficiency of the convicting evidence, we will present the evidence in the light most favorable to the State in this brief summary of the trial testimony.

a place to pull the vehicle over, and Mr. Rogers called 9-1-1. Mr. Hastye passed away at the hospital.

Clarksville police officers, on the look-out for a black Charger involved in a shooting, stopped appellant's vehicle shortly after receiving the 9-1-1 calls. After securing the four men, the officers searched the vehicle. They located an unspent 9mm cartridge in the front passenger seat and a 9mm Beretta pistol with a thirty-round extended magazine attached in the trunk. The officers testified that the trunk could be accessed through the rear passenger seat of the vehicle.

Two of appellant's co-defendants testified at trial. According to them, the handgun belonged to Montez Hall, who was tried at the same time as appellant. Kenneth Hatch recalled hearing co-defendant Hall say that he had brought a gun, and Samuel Majors testified that he saw co-defendant Hall remove the gun from his waistband and place it in the trunk of appellant's car while they were traveling to Clarksville from Nashville. Neither could testify whether appellant knew the weapon was in the vehicle.

Co-defendant Hatch testified that when they left the club's vicinity in appellant's vehicle, appellant followed the Escalade and Grand Marquis. Appellant told the others, "'We about [sic] to follow this car[,] and then we are going to shoot at it.'" Co-defendant Hatch removed the gun from the trunk by reaching through the access panel in the rear passenger seat. According to him, he fired one shot out of the window and handed the gun to co-defendant Hall.

Co-defendant Hall's statement to police, as read during the trial, stated that co-defendant Hatch fired one shot before the gun jammed. Co-defendant Hall claimed that he cleared the unfired cartridge, and co-defendant Hatch returned the weapon to the trunk. Co-defendant Hatch, on the other hand, testified that co-defendant Hall fired the weapon several times toward the Grand Marquis.

According to co-defendant Majors, appellant told his passengers to "'get the gun'" and told co-defendant Hatch, "'[S]hoot.'" Co-defendant Hatch fired one shot before the weapon jammed. Co-defendant Majors said that co-defendant Hatch handed the weapon to co-defendant Hall, who cleared the gun and then proceeded to shoot at the Grand Marquis.

Following the close of proof and deliberations, the jury found appellant guilty of one count of facilitation of second degree murder, three counts of facilitation of attempted second degree murder, and three counts of employing a firearm in the commission of a dangerous felony. However, the three firearm counts were dismissed by operation of law because neither facilitation of second degree murder nor facilitation of attempted second degree

murder is listed in the offense statute as a dangerous felony. *See* Tenn. Code Ann. § 39-17-1324(i)(1).

At the sentencing hearing, Henry Hastye testified that he was Bryan Hastye's father. He further testified that Bryan Hastye was twenty-five years old when he died, and he had been married with two children. He was a college graduate and soldier in the U.S. Army. Mr. Hastye said that appellant had approached him to express his remorse for his son's death.

On behalf of appellant, his mother, Gwendolyn Beasley, testified that appellant had been attending college part-time and working part-time prior to the incident. She said that he was very remorseful about what happened.

The trial court determined that four enhancement factors applied to appellant's sentence: factor (2) – appellant was a leader in the commission of an offense involving two or more criminal actors; factor (3) – the offense involved more than one victim; factor (9) – appellant possessed or employed a firearm during the commission of the offense; and factor (10) – appellant had no hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114. The trial court further determined that one mitigating factor applied: factor (6) – because of appellant's youth, he lacked substantial judgment in committing the offense. *See id.* § 40-35-113.

Appellant's trial counsel failed to file a motion for new trial, a written waiver of appeal, or a notice of appeal. Appellant filed a petition for post-conviction relief that included an allegation that he was denied his right to appeal due to his attorney's ineffective assistance. The post-conviction court, based only on the pleadings, ordered that appellant be given the opportunity to file a motion for new trial and to seek a delayed appeal. Appellant filed a timely notice of appeal indicating that he did not seek a new trial but only review of his sentences. This appeal is now properly before this court.

## II. Analysis

Appellant challenges the length of his sentences, contending that the trial court misapplied all of the enhancement factors that it relied upon in sentencing and that it failed to consider appellant's lack of criminal history as a mitigating factor. Appellant also argues that the trial court incorrectly found that appellant displayed a lack of potential for rehabilitation by not disclosing the identity of the actual shooter. The State responds that the record supports appellant's within-range sentence. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the

presence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -210(b); Tenn. Code Ann. § 40-35-114. In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114; Tenn. Code Ann. § 40-35-210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Id.* at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is

erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Appellant, as a Range I offender, was subject to a sentence of eight to twelve years for the Class B felony, facilitation of second degree murder. *See* Tenn. Code Ann. § 40-35-112(a)(2). He was subject to a sentence of three to six years for each of the Class C felony convictions for facilitation of attempted second degree murder. The trial court, after finding that four enhancement factors and one mitigating factor applied, sentenced him to twelve years for the Class B felony and to six years for each of the Class C felonies. The trial court determined that none of the factors supporting consecutive sentencing applied to appellant and therefore ordered that he serve the sentences concurrently.

*Leader in Commission of Offense*. Appellant argues that the record does not support a finding that he was a leader in the commission of an offense involving two or more criminal actors. *See* Tenn. Code Ann. § 40-35-114(2). He insists that there is no evidence that he furnished the gun or shot at the victims. However, there is ample proof in the record that he instigated the verbal altercation with the victims, that he followed the victims' car, and that it was his idea to shoot at the victims. Therefore, we conclude that the trial court did not err by applying this enhancement factor.

*Multiple Victims*. Appellant contends that the trial court misapplied enhancement factor (3) because there was a separate conviction for each victim. We agree. The language in enhancement factor (3) limits its application to offenses that involve "more than one (1) victim." *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002) (quoting Tenn. Code. Ann. § 40-35-114(3)). "In short, there cannot be multiple victims for any one offense . . . committed against a specific, named victim." *Id.* In this case, there was a separate offense for each specific, named victim. Thus, the trial court erred in applying this enhancement factor.

*Possessing/Employing Firearm*. Appellant argues that the trial court misapplied enhancement factor (9) because there is no proof that appellant furnished, possessed, employed, or ever touched the firearm used in the offenses. We agree. The record clearly evinces that the firearm belonged to Montez Hall, and while appellant encouraged his co-defendants to shoot at Franke'll Rogers' Grand Marquis, there is no proof that he possessed or employed the firearm himself. In such situations, this court has repeatedly concluded that this enhancement factor does not apply to co-defendants who do not personally handle the firearm or deadly weapon. *See State v. Ronald Eugene Hall and Henry Lee Dixon*, No. M2003-02326-CCA-R3-CD, 2005 WL 292432, at *14 (Tenn. Crim. App. Feb. 8, 2005); *State v. Johnny Wayne Harris and Gary L. (Jake) Harris*, No. 03C01-9507-CC-00202, 1996 WL 403585, at *5 (Tenn. Crim. App. July 19, 1996); *cf. State v. Christopher Fielder*, No. W2009-01663-CCA-R3-CD, 2011 WL 3689134, at *13 (Tenn. Crim. App. Aug. 22, 2011),

*perm. app. denied* (Tenn. Dec. 13, 2011) (Appellant's handing "Skil" saw to co-defendant so it could be used as a deadly weapon was sufficient to support enhancement factor.). Therefore, the trial court misapplied enhancement factor (9).

*High Risk to Human Life*.  Appellant argues that the trial court misapplied enhancement factor (10) because the risk to human life was inherent in each of the offenses. However, the trial court applied this enhancement factor because the co-defendants were shooting in a populated area, as evidenced by the 9-1-1 call from a home in the vicinity of the shooting, a recording of which was played during the trial.  "Although factor (10) is inherent in every homicide or attempted homicide and in convictions for aggravated robbery when based upon the use of a deadly weapon, it may appropriately applied when there is a risk to the life of someone other than the victim."  *State v. Robert Jesus Porrata*, No. W2011-00749-CCA-R3CD, 2012 WL 5199693, at *6 (Tenn. Crim. App. Oct. 22, 2012), *no perm. app. filed*.  Nonetheless, the application of this factor to this situation, *i.e.* the firing of a weapon near a neighborhood, is erroneous because the State did not prove that any other person's life was actually at risk.  *See, e.g., State v. Timothy Washington Lyons and Antonio Lamont Scales*, No. M2009-02524-CCA-R3-CD, 2011 WL 300141, at *6 (Tenn. Crim. App. Jan. 18, 2011), *perm. app. denied* (Tenn. May 25, 2011).

*Potential for Rehabilitation*.  Appellant argues that the trial court mistakenly determined that appellant lacked the potential for rehabilitation because he did not disclose who actually fired the shots.  In his appellate brief, he points out that the testimony at trial was inconclusive regarding who fired the fatal bullet, as shown by Montez Hall's conviction for facilitation of second degree murder despite testimony that Hall was one of the shooters. In addition, we note appellant's presentence report includes a statement from him that Hall and Hatch were the shooters.  However, the trial court specifically stated that it was appellant's failure to make a "full disclosure as to what happened" that influenced its determination that appellant lacked the potential for rehabilitation.  In any event, the statute requires that the trial court consider a defendant's potential for rehabilitation, which the trial court in this case clearly did.

*Mitigator*.  Finally, appellant contends that the trial court failed to apply the mitigating factor that he lacked a criminal record.  The sentencing act does not enumerate such a mitigating factor; thus, it would have to be applied under the "catch-all" mitigating factor (13) – "[a]ny other factor consistent with the purposes of this chapter."  *See* Tenn. Code Ann. § 40-35-113(13).  While it is true that the trial court did not explicitly apply this mitigating factor, it is also true that the trial court considered appellant's lack of criminal history when making its sentencing determination.  Therefore, we conclude that the trial court did not err in this regard.

-7-

In summary, the trial court properly applied one enhancement factor and misapplied three enhancement factors. The trial court also considered the facts and circumstances of the offenses, especially that appellant followed the victims' vehicle for several miles and that someone from appellant's vehicle fired upon the victims, killing one. The trial court also considered appellant's youth, lack of criminal record, statements on his own behalf, and potential for rehabilitation. The misapplication of an enhancing or mitigating factor in sentencing does not remove the presumption of reasonableness from a trial court's sentencing determination. *Bise*, 380 S.W.3d at 709. The record reflects that the trial court considered the purposes and principles of the sentencing statute and sentenced appellant to within-range sentences for each of his four convictions. *See id.* at 709-10. Therefore, we affirm the trial court's sentences in this matter. However, we remand this case for entry of a judgment form reflecting appellant's conviction and sentence for count two of the indictment and for correction of his judgment form for count one to reflect that his sentence was ordered to be served concurrently with counts two, five, and eight.

## CONCLUSION

Based on the applicable law, the record, and the parties' briefs, we affirm appellant's convictions and sentences but remand for further proceedings consistent with this opinion.

_____
ROGER A. PAGE, JUDGE